IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARIA GONZALEZ, individually and on behalf of all other similarly situated

*Plaintiff*

vs.

NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY; NATIONWIDE MUTUAL INSURANCE COMPANY; NATIONWIDE GENERAL INSURANCE COMPANY; NATIONWIDE AFFINITY INSURANCE COMPANY

*Defendants*

CIVIL ACTION

2:25-cv-01145

**JURY TRIAL DEMANDED**

# AMENDED COMPLAINT

1. This is a consumer class action complaint arising from Nationwide's deceptive conduct in connection with its issuance of automobile insurance policies in Pennsylvania through its “One Product Policy” (OPP) initiative beginning in or around December 2020.

## THE PARTIES

2. Plaintiff Maria Gonzalez is an adult individual who resides in Pennsylvania and was insured by Nationwide Property & Casualty Insurance Company at all relevant times.

3. Defendants Nationwide Property & Casualty Insurance Company, Nationwide Mutual Insurance Company, Nationwide General Insurance Company,

and Nationwide Affinity Insurance Company (collectively, "Nationwide") are affiliated insurance carriers operating under the Nationwide brand. Each issued Pennsylvania personal auto insurance policies subject to the Motor Vehicle Financial Responsibility Law (MVFRL), and each participated in the OPP initiative that resulted in the improper limitation or denial of insurance benefits, as described below. Upon information and belief, Nationwide Mutual Insurance Company is the parent company of the other named Nationwide entities and exercised enterprise-wide control over the design and implementation of the OPP policy. Each Defendant participated in or enforced the OPP initiative in Pennsylvania.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, because the amount in controversy exceeds $5,000,000 and at least one class member is a citizen of a different state than Defendant.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and because a substantial part of the events giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

### A. Stacking Automobile Insurance in Pennsylvania

6. For purposes of automobile insurance in Pennsylvania, there is a concept known as "stacking." Stacking refers to combining the coverage limits of multiple policies or multiple vehicles on the same policy to increase the overall

amount available for claims following an automobile accident involving an uninsured or underinsured driver.

7. Stacking allows an insured to draw on the coverage of multiple vehicles or policies to increase the maximum payout for a single accident.

8. An insured can waive coverage providing "stacking" of uninsured or underinsured coverages, in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle. 75 Pa. C.S. § 1738(c).

9. The Pennsylvania statute permitting the waiver of stacking provides for a standard, required form for an insured to reject stacking of uninsured and under insured coverage:

> UNINSURED COVERAGE LIMITS
>
> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.
>
> UNDERINSURED COVERAGE LIMITS
>
> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily

> reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

10. The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

**B. Nationwide's OPP**

11. In or around December 2020, Nationwide implemented its OPP, which consolidated and replaced various prior policy forms into a single new policy form for Pennsylvania insureds. This initiative affected hundreds of thousands of Nationwide policyholders in Pennsylvania.

12. The OPP policy introduced material changes and reductions in coverage, including reductions to underinsured and uninsured motorist (UM/UIM) benefits.

13. In *McGuire v. Nationwide*, Case No. 2:22-cv-00769, Judge J. Nicholas Ranjan of the Western District of Pennsylvania held that the OPP constituted a new policy of insurance that reduced coverage for Nationwide insureds, and that all sign-down forms signed prior to its issuance were invalid.[1]

14. Pre-OPP, Nationwide excluded coverage only when an insured used her vehicle to "to carry persons or property for a fee or compensation."

---

[1] Nationwide conceded in the litigation that, if the One Product Policy was a new policy of insurance, it "would require at the very least, all existing Nationwide customers in Pennsylvania who are similarly situated to Eric McGuire to execute and return new stacking rejection forms, along with all of the other statutorily required forms such as waiver of UM/UIM coverage, full tort versus limited tort coverage, etc." *See McGuire,* ECF No. 34 at p. 10.

15. The OPP added the term "transportation network platform" and excluded UM/UIM coverage when an insured "is logged into a 'transportation network platform' as a driver, whether or not a passenger is 'occupying' the vehicle."

16. Pre-OPP, Nationwide excluded coverage only when an insured was using her vehicle in "any prearranged or organized racing, speed, demolition, stunting activity, competitive event, or driver's education course conducted on a racetrack; or in practice or preparation for such event or course."

17. The OPP added the term "performance testing," and excluded coverage when an insured is using her vehicle to "test its performance in speed," even when such testing is not done in connection with any competitive event or in preparation for such an event.

18. Pre-OPP, Nationwide did not exclude coverage while a vehicle was being used in a vehicle sharing program, i.e., Turo.

19. The OPP added the term "vehicle sharing program," and excluded UM/UIM coverage when an insured is occupying a covered auto while "enrolled in a personal vehicle sharing program under the terms of a written agreement."

20. In *McGuire*, Judge Ranjan concluded that this "entirely new" exclusion reduced UM/UIM coverage on the OPP. *See McGuire*, 2025 WL 723203, at *4 ("[W]hat about Turo? There was some coverage for bodily injury associated with a Turo arrangement under the initial policy, but not under the One Product policy.")

21. Pre-OPP, Nationwide excluded coverage for "[u]se of any motor vehicle by an insured without the owner's permission."

22. The OPP exclusion replaces the "permission" language with a requirement that the insured not be "[u]sing a motor vehicle ... [w]ithout a reasonable belief of being entitled to do so[.]" The OPP doesn't define "reasonable belief," but the exclusion qualifies the coverage in that "[a]n 'insured' shall not be held to have a reasonable belief of being entitled to operate a motor vehicle if that person's license has been suspended, revoked or never issued."

23. Judge Ranjan concluded that this new exclusion reduced UM/UIM coverage. *See McGuire*, 2024 WL 4150098, at *10 ("The prior policy's exclusion didn't exclude UM/UIM coverage for an unlicensed driver. And the One Product policy clearly does.").

*Reductions in Coverage on the OPP*

| | logged into a "transportation network platform", but not carrying passengers or property | "performance testing" a vehicle, but not in connection with any pre-arranged event, or in preparation for such event | participating in "vehicle sharing program" under terms of a written agreement | borrowing a vehicle with owner's permission but when license has been suspended |
|---|---|---|---|---|
| UIM | **X** | **X** | **X** | **X** |
| UM | **X** | **X** | **X** | **X** |

24. Despite these material changes, Nationwide represented to its policyholders that the OPP policy was merely a "renewal" of their existing coverage, rather than a new policy of insurance. In a letter issued to hundreds of thousands of Nationwide Insureds prior to issuance of the OPP policy, Nationwide deceptively advised hundreds of thousands of its consumers that it was issuing them a renewal

policy, when in fact, it was issuing them new policies of insurance that reduced their coverage. *See* Exhibit 1, Nationwide Notice of Policy Change.[2]

25. Nationwide's misrepresentations and subterfuge in connection with the OPP went further—not only did Nationwide fail to properly alert its policyholders that it was issuing them new policies with reduced coverage, it failed to obtain new sign-down forms mandated by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa C.S. § 1701, *et seq*., in connection with the issuance of new policies. These forms include the following:

a. Rejection of UM/UIM coverage (75 Pa.C.S. § 1731);

b. Election of Lower UM/UIM Limits (75 Pa.C.S. § 1734);

c. Rejection of Stacking of UM/UIM coverage (75 Pa.C.S. § 1738(d));

d. Tort Option Election Form (75 Pa.C.S. § 1705)

26. When Nationwide implemented the OPP, it represented the change as a "renewal" and failed to provide the statutorily required "Important Notice" mandated by § 1791 of the Motor Vehicle Financial Responsibility Law. That Notice must be given upon the application for original coverage and informs insureds of their statutory rights to elect or reject various coverage options under Sections 1731 and 1734. Because the OPP was a new policy that materially reduced coverage, Nationwide's failure to deliver a new § 1791 Notice deprived Plaintiff and all class members of the opportunity to make lawful, informed coverage elections.

[2] Exhibit 1 is the Notice of Policy Change issued to Eric McGuire. Nationwide issued identical notices to all policyholders who were issued the OPP.

This violation rendered all prior elections and waivers invalid and unenforceable as a matter of law.

27. As a result, Nationwide denied or reduced UM/UIM claims based on forms that were executed before the issuance of the OPP policy—forms that were legally invalid under Pennsylvania law once a new policy was issued.

28. Nationwide also falsely represented to many of its insureds that they were entitled to limited-tort status in connection with personal-injury claims presented to other insurance companies, when they were, in fact, entitled to full-tort status. These insureds either had their claims denied by other insurance companies or settled their claims for substantially less than they would have had Nationwide not misrepresented their tort status.

29. Plaintiff brings this class action to remedy Nationwide's systemic and deceptive denial or reduction of UM/UIM benefits and to obtain appropriate relief for similarly situated policyholders across Pennsylvania.

**C. Nationwide breaches its contract with the Plaintiff.**

30. On or about November 13, 2020, Plaintiff executed a rejection of stacking form for Policy No. 58G111111 issued by Nationwide.

31. On or about April 30, 2021, Nationwide issued the OPP (policy no. 5837J347009) to Gonzalez, which was a new policy of insurance under Pennsylvania law.

32. Nationwide deceptively told Gonzalez that the policy was a renewal policy despite the policy containing reductions in UM/UIM coverage as set forth above.

33. Because the OPP was a new policy, Nationwide was legally required to obtain new UM/UIM stacking waivers from Gonzalez.

34. Nationwide did not do so and instead misrepresented that the OPP was a renewal.

35. Plaintiff was seriously injured in a November 2021 accident[3] and submitted a UIM claim to Nationwide under her auto insurance policy (policy no. 5837J347009). The policy provided for $25,000.00 in UIM coverage, with two vehicles on the policy at the time of the accident.

36. Nationwide denied Gonzalez stacked coverage based on the rejection-of-stacking form she signed in November 2020 and falsely represented to Gonzalez that she was entitled to only $25,000.00 in coverage on her UIM claim.

37. Nationwide knew that the OPP was a new policy of insurance and that the November 2020 rejection-of-stacking form was invalid. Nationwide knew that Gonzalez was entitled to stacked coverage of $50,000.00 on her UIM claim.

38. Nationwide nonetheless deceived Gonzalez into believing that she was entitled to only $25,000.00 in coverage. As a result of Nationwide's misrepresentation, Gonzalez agreed to settled her UIM claim for $25,000.00 on or about November 1, 2022.

39. Had Gonzalez known that she was entitled to $50,000.00 in coverage, she would have settled her claim for substantially more than $25,000.00.

---

[3] Plaintiff was walking in the parking lot at Panera Bread and was struck by a vehicle. She suffered a ruptured gluteus minimus tendon, among other injuries.

40. Because Nationwide procured the settlement agreement by mispresenting a material term, i.e., the policy limits, and because Gonzalez relied on this misrepresentation, the settlement agreement is voidable by Gonzalez.

41. The settlement agreement is alternatively voidable by Gonzalez because there was a mutual mistake as to the policy limits.[4]

42. Hundreds of thousands of similarly situated policyholders across Pennsylvania were denied or under-paid UM/UIM benefits based on forms that became invalid with the issuance of the OPP and were fraudulently induced into voidable settlement agreements.

43. Nationwide's conduct was a breach of its contracts and capable of being proven by common evidence.

## CLASS ACTION ALLEGATIONS

44. Plaintiff incorporates by reference the preceding paragraphs.

45. Plaintiff brings this action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> **Pennsylvania Policyholder Class**
>
> All Pennsylvania Nationwide auto insurance policyholders who paid monthly premiums for the OPP between July 2021-the Court's decision on Class Certification
>
> **Pennsylvania Injury Sub-Class**
>
> All Pennsylvania Nationwide auto insurance policyholders who received the OPP, had an automobile

[4] *See, e.g., Lanci v. Metro. Ins. Co.*, 564 A.2d 972, 975 (Pa. Super. Ct. 1989) (permitting policyholder to void UM release when there was either a misrepresentation or mutual mistake as to the policy limits); *Erie Ins. Exchange v. Meza*, 35 D. & C.3d 514, 521, 1984 WL 2508 (C.C.P. 1984) (same).

accident after issuance of the OPP, and settled their claims, or had their claims denied, during the previous 4 years from the date of the filing of the Complaint where Nationwide:

(a) denied stacked coverage;
(b) afforded lower limits of UM/UIM coverage;
(c) denied UM/UIM coverage, and/or
(d) denied full-tort status for either a UM/UIM claim or third-party claim presented to another insurer.

45. **Numerosity**: The classes include thousands of members and joinder is impracticable.

46. **Commonality**: Common legal and factual questions include whether the OPP policy was a new policy, whether Nationwide was required to obtain new sign-down forms, whether Nationwide breached its contract with class members, and whether class members suffered ascertainable loss.

47. **Typicality**: Plaintiff's claims are typical of those of the class because they arise from the same course of conduct.

48. **Adequacy**: Plaintiff will fairly and adequately protect the class's interests and has retained counsel experienced in complex and class litigation.

49. **Predominance/Superiority**: Common issues predominate, and a class action is superior to hundreds of thousands of individual lawsuits.

**CLAIM FOR RELIEF**
**COUNT I**
**BREACH OF CONTRACT**
**(On Behalf of Both Classes)**

50. Plaintiff incorporates all preceding paragraphs.

51. Nationwide issued insurance contracts in Pennsylvania to members of both Classes.

52. Nationwide breached its contract with the Pennsylvania Policyholder Class by accepting full premium payments while providing reduced coverage via the OPP.

53. Nationwide breached its contract with the Pennsylvania Injury Sub-Class by failing to pay full UM/UIM benefits in response to personal-injury claims, or by affording sub-class members limited-tort status on claims presented to other insurers.

54. Nationwide also breached its contractual and statutory duties by failing to re-comply with Section § 1791 ("Important Notice") when it implemented the OPP, depriving Plaintiff and all class members of the opportunity to make lawful, informed coverage elections.

55. The Pennsylvania Policy Holder Class is entitled to *pro rata* refunds of the premium payments for the reduced coverage they received.

56. For the Pennsylvania Injury Sub-Class, including Plaintiff Gonzalez, they are entitled to have their settlement agreements voided based on Nationwide's misrepresentations as to the policy limits or a mutual mistake as to the policy limits.

57. Nationwide's conduct caused Plaintiff and the class to suffer ascertainable losses, including denied or reduced insurance benefits.

**COUNT II**
**Declaratory Judgment Act**
**28 U.S.C. § 2201-2202**
**(On Behalf of Pennsylvania Injury Sub-Class)**

58. Plaintiff incorporates all the preceding paragraphs above.

59. The Declaratory Judgment Act states that, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

60. There is an actual case and controversy between Plaintiff, the Pennsylvania Injury Sub-Class, and Defendant, Nationwide.

61. Plaintiff settled her personal injury claims under the mistaken belief that she had waived the right to stack insurance coverage. Defendant Nationwide did not disclose to her that it had failed to obtain the appropriate stacking waiver under Pennsylvania law.

62. Based on this, Plaintiff entered into a settlement agreement related to personal injuries she sustained for less money that she was otherwise entitled pursuant to her insurance policy.

63. Plaintiff respectfully requests that the Court declare that Plaintiff was entitled to stacking coverage at the time of her settlement and permit her, and the other members of the Pennsylvania Injury Sub-Class, to seek the balance of the policy limits that should have otherwise been available.

WHEREFORE, Plaintiff requests that the Court:

A. Certify this action as a class action under Rule 23;

B. Appoint Plaintiff as class representative and undersigned counsel as class counsel;

C. Enter judgment for Plaintiff and the class for breach of contract;

D. Grant injunctive relief requiring Defendant to reform policies and notify insureds;

E. Declare any settlements procured under misrepresented policy Limits to be subject to reform and allow for the availability of the full policy limits;

F. Award compensatory damages, interest, and costs;

G. Grant such other relief as the Court deems just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully,

**SWARTZ CULLETON FERRIS**

By: /s/ Anthony J. Giannetti
Anthony J. Giannetti, Esquire
Pa. Id. 318225
agiannetti@swartzculleton.com
/s/ Brandon A. Swartz
Brandon A. Swartz, Esq.
Pa. Id. 78344
bswartz@swartzculleton.com
429 First Avenue, Suite 100
Pittsburgh, PA 15219
412-238-7610
Fax: 412-200-7595

**SALTZ MONGELUZZI & BENDESKY, P.C.**

*/s/ Patrick Howard*
Patrick, Howard, Esquire
Pa. Id. 88572
1650 Market Street, 52nd Floor
One Liberty Place
Philadelphia, PA 19103
Telephone: 215-496-8282
Facsimile: 215-754-4443
phoward@smbb.com

*Attorneys for Plaintiff*

Date: October 31, 2025

# EXHIBIT 1

Nationwide®
is on your side

**Your Policy Number 5837J 349976**
**YOUR NATIONWIDE AUTO POLICY**
**NOTICE OF POLICY CHANGE**

0757500092010

As a valued member we want to provide you with notice of important changes you'll see as you continue to choose Nationwide® to help you protect what's important to you. Because we are committed to providing the great customer service you deserve, we are taking steps to further align and simplify our product offerings as part of our strategy to provide a single Nationwide experience.

**What you need to know**

While our new product offerings will require changes to your current Nationwide policy, we're committed to making the change as easy as possible for you. The following is what you need to know when your policy renews:

1. Coverage under the terms and conditions of your current policy with NATIONWIDE AFFINITY INSURANCE CO. OF AMERICA will end at the expiration of the current policy term and be renewed under the terms and conditions of your renewal policy with NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA.
2. Enclosed is your renewal packet. Your renewal policy incorporates updated product features and other changes to your policy. These may include changes to the available coverage, coverage limits and deductibles. Please see specific details below in the "**Description of changes**".
3. While your policy number will change, the renewal dates will remain the same. **This ensures that upon payment of the renewal premium, you will continue to have uninterrupted coverage.**
4. The dollar amount of any increase or decrease in premium compared to your current policy is the result of many factors specific to your policy. The amount of your renewal premium is provided on your enclosed Policy Declarations.

This notice applies to your Nationwide Auto policy. Members with multiple policies, or an auto policy with more than four vehicles, will receive a notice specific to each policy.

In addition to the "**Description of changes**" below, to better understand your renewal policy, we encourage you to **read your policy, including the Policy Declarations and any applicable endorsements.** Please see the "**Where to access your policy documents**" section on your Policy Declarations for complete information on accessing your policy documents.

In connection with issuing you a policy, we may review your credit report or obtain or use a credit-based insurance score based on the information contained in that credit report. We may use a third-party in connection with the development of your insurance score.

**What you need to do**

To maintain uninterrupted coverage and accept your renewal policy, please pay your bill when it arrives. If you previously authorized payment via recurring electronic fund transfer (EFT), then payment will be automatically withdrawn from your account.

Nationwide®
is on your side

### Additional information

If you're currently registered at nationwide.com, your existing logon ID and password will continue to work. If you've never registered for online access, please visit our website at nationwide.com and click on the "Sign up for account access" link.

### For help when you need it

We appreciate your business and look forward to continuing to serve you. Please contact the Nationwide Service Center at 877-ON YOUR SIDE® (877-669-6877) or your agent, whose name and phone number are available on your Policy Declarations, for more information about these changes to your policy.

### Description of changes

Please contact your Nationwide representative for more information about these features and other optional coverages available.

**Clarifications to coverage in the policy**

- Clarification added that there is no coverage under Parts A, C and D when a covered vehicle is used by any insured who is logged into a transportation network platform as a driver, whether or not a passenger is occupying the vehicle
- Current Unauthorized Use of Other Motor Vehicles exclusion has been moved from General Policy Conditions to Parts A, C and D and clarifies that non-permissive use includes operating a vehicle while license suspended, revoked or never issued. This does not apply to the use of your covered auto by you, a family member or a business partner, employee or agent of you or a family member
- Clarification added that the rented or leased to others exclusion includes vehicle sharing under Parts A and D
- Punitive damages are not a covered cause of loss under Parts A and C
- Clarification added to racing exclusion under Parts A, C and D that "performance testing" is not covered

**Endorsements no longer offered**

- Additional coverage for sound, pictures, and data devices
- Additional coverage for customization
- Utility Trailer
- Vehicle Value Upgrade Coverage
- Additional Interest — Employer

**Broadening of coverage in the policy**

- Coverage for domestic and civil partners
- Automatic physical damage coverage for newly acquired autos for seven days
- Custom Equipment — Combines custom and electronic equipment. Base limit increased to $3,000
- Non-owned trailer increased from $500 to $1,500

**Endorsements/Options broadened**

- Pet Injury Collision Coverage (part of Loyalty Rewards) increased from $500 to $1,000

Nationwide®
is on your side

**Other**

- Policies with Vehicle Value Upgrade Coverage will be rolled to the New Car Replacement Plus Coverage. **Note, coverage will be provided based on the age of the vehicle**
  - 0-2 years — New Car Replacement Coverage
  - 3-5 years — Vehicle Value Upgrade Coverage
  - 0-5 years — GAP Coverage
- Amendatory Endorsement — Benefits is no longer being offered as an endorsement
- Home and Car Special Deductible is added. If you have an Auto policy and a Homeowner, Tenant or Condominium policy with Nationwide, and if you have a covered loss to your car and your property from a single occurrence, only the highest deductible will be applied
- Automobile Insurance Guarantee is no longer being offered

**Change in limits and deductibles**

To provide our customers with the best possible service and products with value — we regularly review our coverage limits and deductibles. You'll notice the following changes to your new policy's available coverage limits and deductibles:

- If your current coverage limit is no longer available, your limit will move to the next highest available option
- If your deductible amount is no longer available, your deductible amount will move to the next highest available option

**Farm Bureau discount**

Nationwide discount eligibility rules have changed and as a result, certain types of Farm Bureau memberships are no longer eligible for an insurance discount.

The information above does not represent all of the changes taking place with your policy at renewal. We suggest you **read your policy, including the Policy Declarations and any applicable policy endorsements.** If there is any conflict between the information provided herein and the policy and its endorsements, the provisions of the policy and its endorsements shall prevail.

07575000092027



*Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. ©2015 Nationwide*